**IN THE COURT OF APPEALS OF IOWA**

No. 19-1209
Filed October 9, 2019

**IN THE INTEREST OF N.M.-R.,**
**Minor Child,**

**K.M.-R., Mother,**
　　　　Appellant.

_____

　　　　Appeal from the Iowa District Court for Linn County, Barbara H. Liesveld,
District Associate Judge.

　　　　A mother appeals the termination of her parental rights to her child.
**AFFIRMED.**

　　　　Emma Shimanovsky of Iowa Legal Aid, Cedar Rapids, for appellant mother.

　　　　Thomas J. Miller, Attorney General, and Meredith Lamberti, Assistant
Attorney General, for appellee State.

　　　　Julie Gunderson Trachta of Linn County Advocate, Inc., Cedar Rapids,
attorney and guardian ad litem for minor child.

　　　　Considered by Tabor, P.J., and Mullins and May, JJ.

**MAY, Judge.**

The juvenile court terminated a mother's parental rights to her child, N.M.-R. On appeal, the mother contends (1) the State failed to prove grounds for termination, (2) termination was not in the child's best interest, and (3) the State failed to provide reasonable efforts toward reunification. We affirm.

## I. Background Facts and Proceedings

N.M.-R. was born in June 2017.[1] In January 2018, the Iowa Department of Human Services (DHS) intervened because of reports the mother was not appropriately supervising or caring for the child. DHS learned the mother had left the child unattended and placed the child in dangerous situations. The mother also fed the child foods that were not appropriate for her age. For example, when the mother ran out of formula, she gave the child condensed milk. She also gave the child chicken, pop, tea, sticky candy, hard candy, and more when the child was only six months old.

DHS responded by providing safety services, including the implementation of a safety plan. But still the mother struggled to provide adequate care and supervision. For example, she continued to pull the child off the floor by her arm. She failed to properly hold the child on her lap. And she continued using marijuana while caring for N.M.-R. In an affidavit supporting removal, a social worker opined the mother "lack[ed] insight into how she [was] impaired after smoking marijuana when providing supervision to her young child."

---

[1] The putative father's whereabouts are unknown. And no paternity test was conducted. Yet his rights were terminated under Iowa Code section 232.116(1)(b), (e), and (h) (2019). He does not appeal.

In February 2018, the mother was arrested for stealing from a store.[2] N.M.-R. was with her at the time. DHS removed N.M.-R. and placed her in foster care.

Throughout this case, the mother struggled with mental-health and substance-abuse issues. In April 2018, she was diagnosed with borderline personality disorder, mild intellectual disability, and a moderate cannabis-use disorder. She completed substance-abuse evaluations, but she was not consistent in pursuing treatment. Between April 2018 and March 2019, the mother tested positive for marijuana seven times. In the first three months of 2019, she "no showed" for drug testing on six occasions.

The State filed for termination in January 2019. A termination hearing was scheduled for March.

In February, the mother filed a motion requesting a hearing on the State's reasonable efforts. The motion also asked for the termination hearing to be postponed. Following the reasonable-efforts hearing, the juvenile court found reasonable efforts toward reunification had been made. The juvenile court also declined to postpone the termination hearing.

A termination hearing was held on March 28. Ultimately, the juvenile court entered an order terminating the mother's rights. The mother now appeals.

## II. Standard of Review

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence

---

[2] While the mother denies stealing, she did plead guilty to fifth-degree theft.

is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, No. 14-1517, 2015 WL 791698, at *3 (Iowa Ct. App. Feb. 25, 2015) (citing *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).

## III. Analysis

We generally use a three-step analysis to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). First, we must determine whether a ground for termination under section 232.116(1) has been established. *Id.* at 472–73. If a ground for termination has been established, we must then consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 473. We then consider "whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *Id.* Finally, we consider any additional arguments raised by the appealing parent.

### A. Grounds for Termination

We first determine whether the State has proved grounds for termination under Iowa Code section 232.116(1). *Id.* at 472–73. The juvenile court found grounds for termination under Iowa Code section 232.116(1)(h). Section 232.116(1)(h) authorizes termination when:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The mother only challenges the fourth element. She points to her substance-abuse and psychological evaluations as evidence of her progress. She also notes she has graduated high school and maintains stable housing. Thus, she contends the State did not prove N.M.-R. could not have been returned to her at the time of the termination hearing.

We disagree. By the time of the termination hearing, the child had been removed from the mother well over a year. For most of that time, the mother's visits were fully supervised. She only progressed to semi-supervised visits in February 2019, about a month before the March termination hearing. At that hearing, the family's family safety, risk, and permanency (FSRP) worker testified the child could not be safely returned to the mother. In support of her opinion, the FSRP worker described a number of serious concerns, including the mother's failure to understand the child's developmental needs, the mother's persistence in giving inappropriate foods to the child, and the mother's continued inability to maintain a "consistently safe environment" for the child.

Like the juvenile court, we conclude there is clear and convincing evidence the child could not be returned to the mother at the time of the hearing. Grounds for termination exist under Iowa Code section 232.116(1)(h). The first step of our analysis satisfied.[3]

---

[3] In her testimony, the mother suggested she could improve her performance if more time were allowed. Although she does not directly raise this issue on appeal, we address it briefly. "After the statutory time period for termination has passed, termination is viewed with a sense of urgency." In re C.V., No. 18-0851, 2018 WL 4361061, at *3 (Iowa Ct. App.

**B. Best Interest**

Our next step is to consider the best interest of the child. Our analysis is governed by Iowa Code section 232.116(2), which states:

> In considering whether to terminate the rights of a parent under this section, the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.

The mother contends termination is not in N.M.-R.'s best interest because she has a strong bond with the child. Moreover, the current foster home is not considering adoption. *See* Iowa Code § 232.116(2)(b).

We have considered these concerns. As explained, however, the mother struggles to provide for this child's safety and other basic needs, such as supervision and proper nutrition. *See id.* § 232.116(2). Indeed, the mother struggles to meet her own needs, including substance-abuse treatment.

But there is room for hope. As the juvenile court found, N.M.-R "is an adoptable child." So, even though her current foster placement is not prepared to adopt, termination will still free N.M.-R. to find permanency in a "safe, stable and appropriate forever home" as the juvenile court noted. Like the juvenile court, we believe these benefits outweigh "any trauma that may occur as a result of termination." Termination is in the child's best interests. *See In re J.E.*, 723

---

Sept. 12, 2018). Nevertheless, Iowa Code section 232.104(2)(b) authorizes a court to grant a six-month extension if it determines "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Here, however, the juvenile court had already granted a six-month extension. Even after this additional time, N.M.-R. still could not be safely returned to the mother. We are not persuaded that even more time would remedy the situation. *See P.L.*, 778 N.W.2d at 41 ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child.").

N.W.2d 793, 802 (Iowa 2006) (Cady, J., specially concurring) (noting the child's safety and need for permanency are the "defining elements" under the best-interest analysis).

### C. Exceptions

We turn next to the exceptions under Iowa Code section 232.116(3). The parent bears the burden of proving an exception exists. *A.S.*, 906 N.W.2d at 476.

In this case, the mother has not cited section 232.116(3). Therefore, no issue is presented for our review. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."); *accord In re D.E.*, No. 11-2033, 2012 WL 473131, at *3 (Iowa Ct. App. Feb. 15, 2012) (declining to consider section 232.116(3) where parent appealing failed to cite it).

In an abundance of caution, however, we have considered the section 232.116(3) exceptions. Like the juvenile court, we conclude none applies.

### D. Additional Claims

Finally, the mother argues the State did not make reasonable efforts toward reunification. The State is required "to 'make every reasonable effort' to reunify the family as quickly as possible, consistent with the best interests of the children." *In re S.H.*, No. 15-1939, 2016 WL 757421, at *4 (Iowa Ct. App. Feb. 24, 2016) *(*quoting Iowa Code § 232.102(7) (2016)); *see* Iowa Code § 232.102(9) (2019). Here, the mother claims the State failed in two regards. She points to a delay in processing requested home studies as well as a month-long lapse in the mother's drug testing authorization.

As for the home studies, the mother asked the State to consider placing the child in the homes of relatives. The record does not show termination could have

been avoided by processing the studies sooner. None of the mother's proposed candidates was determined acceptable for placement. And placement with a relative would not have remedied the parenting issues that made termination necessary. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) (noting the focus of reasonable efforts is to improve parenting).

We turn next to the drug-testing authorization lapse. The juvenile court found the mother's drug testing number and authorization lapsed for about a month. So, "through no fault of her own," the mother was briefly impaired in her ability "to provide clean drug tests for the court."

Still, parents are only entitled to reasonable efforts, not perfect efforts. *See In re S.B.*, No. 12-1479, 2012 WL 4903079, at *1–2 (Iowa Ct. App. Oct. 17, 2012). Although the State's drug-testing program was not perfect, we agree with the juvenile court that the State made reasonable efforts toward reunification. Those efforts included, among many others, a drug-testing program that functioned appropriately throughout most of this case.

The results of that program are revealing. Prior to the lapse, the mother tested positive for marijuana on six occasions. Following the lapse, she "no showed" on six of the ten times her number was called. Two of which occurred in February 2019—the month prior to the termination hearing. Then she tested positive on March 12—just about two weeks before the March 28, 2019 termination hearing.

Given this history, we cannot conclude the lapse had a substantial impact on the mother's testing compliance or her drug use. Nor can we conclude the lapse had a substantial impact on the mother's efforts. Although the mother's drug

use was a factor in the juvenile court's decision to terminate, we agree with the State that the "findings supporting termination were primarily based upon safety concerns surrounding supervision, development, adequate nutrition, and care."

## IV. Conclusion

The juvenile court properly terminated the mother's parental rights.

**AFFIRMED.**